# EXHIBIT "A"



# HARKHAM SHIPPING, LLC

### Harkham Shipping, LLC DOCKAGE / SERVICE AGREEMENT

Vessel Owner Name: __Rosemere Cesar__
Present Address: __595 NW 118th St Miami, FL 33168__
Phone No. __305-684-5529__  Alt Phone No. _____
Emergency Contact Name & Phone: __Sophia Joseph 917-438-8774__
Vessel Name: __Loyalty Express__
Vessel Flag & IMO Registration No. __Tanzania, Imo 7007514__
Type of Vessel and Description __General Cargo 1,074 GRT__
Length x Breadth of Vessel __70.29m x 10.52m__
Vessel's Insurance Company Name: _____
Vessel's Insurance Company Number: _____

Dockage amount per Month:      $26,200
Utilities per Month:            $350.00
Trash Dumpster:                 $450 per schedule pickup
2 x Forklifts:                  Included Free of Charge (excluding LPG Gas)
Security Fees: Vessel owner is required to pay 50% Security Fees: $108.00 Per Day

### Terms and Conditions of Dockage / Service Agreement

THIS AGREEMENT is by and between Harkham Shipping, LLC (hereinafter referred to as "HS") located at 3001 NW South River Drive, Miami FL 33142 and the Vessel Owner and/or its authorized Agents, Captain or other representatives of the Vessel identified above (hereinafter referred to as "Owner"). This Agreement is valid only for the "Vessel" identified above. HS, Owner and Vessel are collectively referred to as the "parties". The parties agree to the terms and conditions set forth below:

1. This Agreement is for use of one (1) Dock Space for the above-described vessel and one (1) Warehouse Area, which shall be used at the sole risk of Vessel Owner and designated by HS. HS shall not be liable for the care or protection of the Vessel nor for any loss or damage of whatever kind or nature to the Vessel, her contents, gear or equipment, or any other property howsoever occasioned.

1



**HARKHAM SHIPPING, LLC**

2. HS shall have a maritime lien against the Vessel, her appurtenances and contents, for any and all unpaid sums due for use of the Dock Space, other necessaries provided to the Vessel, and damage caused or contributed to by the Vessel or by the Vessel Owner, its guests, invitees or licensees to any other docks or property of HS or to any other person at the HS terminal.

3. Owner agrees to pay any and all costs of collection and reasonable attorney's fees incurred by HS in connection with or arising out of any and all delinquent sums owed to HS by the vessel and/or Owner, its agents and representatives. The Vessel will not be released to owner, its agents and / or representatives until payment of all outstanding amounts due and owing to HS have been made in full.

4. This Agreement shall continue in effect from month to month, unless sooner terminated as provided below:

   a. By destruction of the Dock Space by fire, storm or any other calamity.

   b. In the event that the Vessel Owner shall make a bona fide sale of the Vessel, in which event the Vessel Owner shall immediately notify HS.

   c. Upon ten (10) days written notice by HS to Vessel Owner terminating the Agreement with or without cause. Or fourteen (14) days written notice by Vessel Owner to HS terminating the Agreement.

   d. By breach or default by Vessel Owner as provided in Paragraph (6) below.

5. If any rent or other payment due is nor received by HS within ten (10) days of the due date of such payment, Tenant shall pay, in addition to such payment a late charge equal to Three (3%) percent of the payment which is past due. If any payment due from Tenant shall remain overdue for more than ten (10) days, interest shall accrue daily on the past due amount from the date such amount was due until paid or judgment is entered at a rate equivalent to the lesser of eighteen (18%) percent per annum and the highest rate permitted by law. Interest on the past due amount shall be in addition to and not in lieu of the late charge or any other remedy available to Landlord.

6. In the event Vessel Owner defaults in the payment of dockage or any part thereof or if Vessel Owner shall violate any of the covenants or conditions of this Agreement or any of the regulations governing dockage, then HS shall immediately be entitled to remove the Vessel from the Dock Space at the Vessel Owner's sole risk and expense and to re-enter and retake possession of the Dock Space. In addition, HS shall have any and all rights and remedies available to it in law or in equity.

7. Vessel Owner shall not use the Dock Space, or any part thereof or permit the same to be used for any illegal, immoral or improper purposes. Vessel Owner shall not make or permit to be made any disturbance, noise or annoyance whatsoever detrimental to the vicinity of the Dock Space. Vessel Owner shall make any and all repairs to the Dock Space if the damage was in any way caused by the fault or negligence of the Vessel or his guests, invitees or licensees and Vessel Owner shall, at the expiration of



## HARKHAM SHIPPING, LLC

16. The failure of the HS to enforce any provisions of this Agreement shall not constitute waiver of the right to enforce same thereafter.

17. This Agreement shall be deemed to have been made in and shall be construed in accordance with the law of the State of Florida. Each Party hereby irrevocably submits to the exclusive jurisdiction of the courts situated in Miami Dade County Florida and any judicial action or proceeding for any dispute arising from this Agreement or the relationship between the parties established hereby shall be brought and litigated in courts located in Miami Dade County Florida

18. The unenforceability, invalidity or illegality of any provision of this Agreement shall not render the other provisions unenforceable, invalid or illegal.

19. Vessel Owner shall not make any repairs or maintenance on Vessel while it is docked at the Dock Space, nor shall Vessel Owner wash the Vessel with or without a water hose, nor shall any spillage, debris or of any kind be spilled, dropped or swept from the Vessel. It is not permitted for anyone to reside on the Vessel at any time. No pets are allowed on the premises.

20. Vessel Owner shall provide the HS at time of signing this agreement a copy of adequate liability insurance and vessel registration. Liability Insurance Policy Information: See Attached Vessel Registration Information: See Attached

21. A Deposit of $15,000 is required at time of signing of this agreement to reserve dockage space and will be applied to the first month's payment which shall be paid in full the day the vessel reaches the dock.

Witnesses for HS:

_Joseph Mandi_ (signature)

_(signature)_

Witnesses for Vessel Owner:

CERISIER HERVE

_(signature)_

HS:
Harkham Shipping, LLC,
a Florida limited liability company
By: _(signature)_
Gabriel Harkham, Managing Member

Date March 4th 2019

Vessel Owner:

By: _(signature)_

Date ~~April 1st 2019~~
March 4th 2019

G.H. RC

4



# HARKHAM SHIPPING, LLC

the term of this Agreement, surrender and deliver said Dock Space, without demand in as good order and conditions as when entered upon, ordinary wear and tear excepted.

8. Vessel Owner shall permit HS or its agents, at any reasonable time, to enter the Dock Space for the purpose of exhibiting same or making repairs thereto.

9. Vessel Owner shall not assign this Agreement, nor sublet the Dock Space, or any part thereof, to be used for any other purpose than as above stipulated, nor make any alterations therein, nor any and all additions thereto, without the prior written consent of the Association and remain upon the Dock Space as a part thereof, and be surrendered with the Dock Space at the termination of this agreement.

10. Vessel Owner shall, at Vessel Owner's sole cost and expense, comply with all statutes, ordinances, rules, orders, regulations and requirements of federal, state and municipal authorities of any kind and all of their departments and bureaus applicable to the Dock Space and/or Vessel Owner's use thereof.

11. The failure of HS to enforce any provisions of this Agreement shall not constitute waiver of the right to enforce same thereafter.

12. RELEASE AND INDEMNIFICATION: RELEASE: Vessel Owner shall use the Dock Space at its sole risk and in a manner so as not to endanger any person or property, and HS shall not be liable for the care, protection or security of the vessel, her appurtenances, tackle, gear or contents, or for any loss or damage of any kind or nature due to fire, theft, vandalism, collision, equipment failure, windstorm, hurricane, rains, or other casualty or calamity. EVEN IF SUCH LOSS OR DAMAGE IS CAUSED BY NEGLIGENCE OF HS, ITS AGENTS, SERVANTS, EMPLOYEES OR INDEPENDENT CONTRACTORS, and HS is hereby expressly released from all such liability. INDEMNIFICATION: Vessel Owner further agrees to protect, indemnify, hold harmless and defend HS from any and all liability, claims or expense, by reason of any damage to property, or injury or death to any person (INCLUDING THAT CAUSED BY OR RESULTING FROM THE NEGLIGENCE OF HS, ITS AGENTS, SERVANTS EMPLOYEES, OR INDEPENDENT CONTRACTORS), done or occurring in or about the Dock Space or any liability sustained during the operation of the vessel or vessel owner's business, if any.

13. In no event shall HS be liable to the vessel, the vessel owner, its agents, representatives or any third party for any loss of use, revenue or profit or loss of data or diminution in value or for any consequential, indirect, incidental, special, exemplary or punitive damages of any nature whatsoever whether arising out of breach of contract, tort (including negligence) or otherwise, regardless of whether such damages were foreseeable.

14. No Right of Setoff. Vessel Owner shall have no right to affect a setoff of any amounts claimed by Vessel Owner as being due to it by HS against any sums which may be due and owing by Vessel Owner to HS for dockage or other services provided by HS to the vessel or on the Vessel Owner's behalf.

15. Any amendments, modifications, additions or deletions to this Agreement must be in writing.



# SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

THIS SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS dated the 4th of March 2019 ("Agreement") is made by and between HARKHAM SHIPPING LLC ("HARKHAM") and LOYALTY OVERSEAS CORPORATION, and any of its affiliates or assigns, (hereinafter and collectively, "VESSEL OWNER"). (HARKHAM and VESSEL OWNER shall be known collectively as the "Parties".)

**RECITALS**

WHEREAS, HARKHAM and VESSEL OWNER have become involved in a dispute relating to a number of different transactions related to a dockage/service agreement dated the 3rd day of March 2017 by and between HARKHAM and VESSEL OWNER, as well as a relationship arising out lease, rental and/or use of dockage space, warehousing area between the Parties, as well as other supplies, services and necessaries allegedly rendered to the vessel, "LOYALTY EXPRESS" - one 1970 70.29m general Cargo ship bearing Official Number 400324 (Zanzibar) and IMO number 7007514, or its owner, ("Disputes"); and

WHEREAS, the Parties desire finally and completely to resolve, compromise, and settle any and all Disputes pursuant to the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and covenant contained herein, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1. **Payment**. VESSEL OWNER agrees to pay HARKHAM in the manner described below.

    a. VESSEL OWNER shall pay HARKHAM in the amounts and pursuant to the terms noted below upon the complete execution of this Agreement.

        i. Upon execution of this Agreement, VESSEL OWNER agrees to pay the sum of USD$215,000 to HARKHAM for full and final settlement of the Disputes between the Parties and as consideration for this Agreement.

        ii. Payment shall be made in compliance with the Payment Plan attached hereto as Exhibit A, which consists of monthly installments.

        iii. Payments shall be made on or before the 20th day of each calendar month, until paid in full.

        iv. The sum of $30,000.00 had been paid to HARKHAM, and this payment shall be applied by HARKHAM as the initial debt repayment as set forth in the Payment Plan attached hereto as Exhibit A.

2. **HARKHAM's agreement relinquish any claim or lien against Vessel.** The Parties agree to rescind, terminate and/or nullify any and all prior agreements, charters, leases, and/or any other documents related to transactions involving the lease, rental or use of any dock space, warehouse area or physical space, and/or any and all supplies, services, dockage or necessaries provided to the Vessel or its owner. HARKHAM relinquishes any and all liens or claims in the Vessel and/or its ownership entity arising out the disputes only. The relinquish of any claim or lien against vessel is not intended to, and shall not extend to 6. Timely payments   G.H/RC

G.H/RC

1

3. <u>Releases</u>.

   a. **HARKHAM's Release to VESSEL OWNER and its affiliates**. HARKHAM hereby fully and forever releases and discharges VESSEL OWNER and its affiliates, and its respective past, present, and future directors, officers, shareholders, employees, agents, partners, representatives, attorneys, parent and affiliated corporations, subsidiaries, divisions, joint venturers, predecessors, successors, beneficiaries, and assigns, from any claims asserted and that could have been asserted in connection with the Disputes, including, but not limited to breach of contract and bad faith and any demands, obligations, causes of action related in any way to non-payment, and damages, or costs, of any nature whatsoever, in any way arising out of, growing out of, or resulting from the parties relationship from the beginning of time until the Effective Date of this Agreement.

   b. **VESSEL OWNER' Release to HARKHAM and its affiliates**. VESSEL OWNER hereby fully and forever releases and discharges HARKHAM and its affiliates, and its respective past, present, and future directors, officers, shareholders, employees, agents, partners, representatives, attorneys, parent and affiliated corporations, subsidiaries, divisions, joint venturers, predecessors, successors, beneficiaries, and assigns, from any claims asserted and that could have been asserted in connection with the Disputes, including, but not limited to breach of contract and bad faith and any demands, obligations, causes of action related in any way to the Disputes, and damages, or costs, of any nature whatsoever, in any way arising out of, growing out of, or resulting from the parties relationship from the beginning of time until the Effective Date of this Agreement.

   c. **Release does not extend to Obligations under this Agreement**. The Release set forth above in Paragraph 3(a)-(b) is not intended to, and shall not, extend to or otherwise release or discharge any rights, privileges, benefits, duties, or obligations of any of the Parties by reason of, or otherwise arising under, this Agreement.

4. <u>Non-Disparagement Agreement and Confidentiality</u>:

   a. All Parties hereto agree that they shall not disclose any information regarding the material terms of the Parties' Settlement of the aforementioned claims or matters, except to their respective officers, members, directors, attorneys, and accountants, all of whom agree to maintain such information in confidence, provided, however, that this section shall have no application to any evidence or testimony requested by order of any Court or request by any government agency provided, to the extent reasonable and practical under the circumstances, that prior to the compliance with any such order or request, the affected party is given written notice and an opportunity to challenge and object to the order.

   b. The Parties agree that each will not make any disparaging, demeaning, nor denigrating comments to any person or entity, or take any action towards the other, whether in oral discussions or in writing, relating to any aspect of the Parties' relationship or the termination thereof, nor shall any party act in any way that may damage the reputation or integrity of the other or its associates, partners, employees, consultants, principals, customers, suppliers, vendors, bankers, investors, agents, representatives, or other third party, whether past, present, or future, and whether or not based on or with reference to their past relationship; provided, however, that this section shall have no application to any evidence or testimony requested of any of the Parties hereto as ordered by any Court or government agency.

c. Violation of the terms hereof shall provide the aggrieved party (or parties) with a claim for all actual damages suffered by reason of such violation, and the Parties agree and acknowledge that the terms hereof are providing a material inducement toward the resolution of their disputes, and so the right is expressly reserved to petition the Court retaining jurisdiction over such resolution to rescind and/or modify the parties settlement by reason of a violation of the terms hereof.

5. **Miscellaneous Provisions**

   a. **Amendments**. Neither this Agreement nor any term set forth herein may be changed, waived, discharged, or terminated except by a writing signed by the Parties.

   b. **Agreement voluntarily entered into by each of the Parties**. This Agreement is executed voluntarily be each of the Parties without any duress or undue influence on the part, or on behalf, of any of them. The Parties represent and warrant to each other that they have read and fully understand each of the provisions of this Agreement and have relied on the advice and representations of competent legal counsel of their own respective choosing.

   c. **Interpretation**. This Agreement has been reviewed by experienced and knowledgeable legal counsel for each of the Parties. Accordingly, none of the Parties shall be presumptively entitled to have any provisions of the Agreement construed against any of the other Parties in accordance with any rule of law, legal decision, or doctrine.

   d. **No Admission of Liability/No Precedential Value**. The Parties agree that this Agreement is the result of a compromise of disputed issues, that the execution and delivery of this Agreement by any of the Parties shall not constitute or be construed as an admission of any liability, a course of performance, or wrongdoing on the part of any of them and that the settlement reflected in this Agreement shall be without precedential value. Nothing in this release shall be construed to represent an admission of wrong doing or a breach of contract.

   e. **Attorneys' Fees, Costs, and Expenses**. Each of the Parties shall bear its own costs, attorneys' fees, and expenses in connection with the negotiations for and preparation of this Agreement and resolution of the Disputes or Action.

   f. **No Third-Party Beneficiaries**. Nothing in this Agreement is intended or shall be construed to give any person or entity, other than the Parties and their respective successors and permitted assigns, any legal or equitable right, remedy, or claim under or in respect to this Agreement or any provisions contained herein; this Agreement and any conditions and provisions hereof being and intended to be for the sole and exclusive benefit of the Parties as well as each of their respective successors and permitted assigns, and for the benefit of no other person or entity.

   g. **Severability**. If any provisions of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.

h. **Headings**. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

i. **Recitals**. The recitals set forth at the beginning of this Agreement shall not be admissible to prove the truth of the matters asserted therein in any action or proceeding involving either of the Parties (other than an action or proceeding brought to enforce the terms of this Agreement), nor do either of the Parties intend such recitals to constitute admissions of fact by any of them.

j. **Additional Representations and Warranties**. Each of the Parties represents and warrants that it is fully authorized to enter into this Agreement. In addition, each of the corporate Parties that is still in existence as of the Effective Date represents and warrants that (i) it is duly organized and existing in good standing, (ii) it has taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further corporate or internal approval is necessary, and (iii) the making and performance of this Agreement will not violate any provision of law or the party's articles of incorporation, charter, or by-laws. In addition, each of the individuals signing this Agreement represents and warrants that they are authorized to enter into this Agreement on behalf of the respective parties.

k. **Additional Necessary Documents**. The Parties, and each of them, agree to execute such additional documents as may be reasonably required in order to carry out the purpose and intent of this Agreement, or to evidence anything contained herein.

l. **Entire and Integrated Agreement**. This Agreement is intended by the Parties as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the Parties with respect to the subject matters contained herein. This Agreement supersedes any and all prior promises, representations, warranties, agreements, understanding, and undertakings between or among the Parties with respect to such subject matters and there are no promises, representations, warranties, agreements, understanding, or undertakings with respect to such subject matters other than those set forth or referred to herein.

m. **Execution in Counterparts**. This Agreement may be signed in multiple counterparts and the separate signature pages executed by the Parties may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument. This Agreement may be executed in facsimile or electronic counterparts. An original signature will be provided if requested by any Party. The "Effective Date" of this Agreement is the date this Agreement has been executed and delivered by and to all Parties hereto.

n. **Enforceability of Agreement**. In the event of any dispute, claim, or action based upon, arising out of, or relating to, the breach, enforcement, or interpretation of any of the provisions of this Agreement or where any provision hereof is validly asserted as a defense, the prevailing party or parties in such dispute, claim, or action shall be entitled to recover its or their reasonable attorney's fees, costs and expenses from the non-prevailing party or parties.

o. **Time of the Essence**. Time is of the essence with respect to each of the obligations of the Parties hereunder, and each of the provisions hereof.

4

### 6. Timely Payments

a. Payments due on April 1st 2019 must be made on that date in full or **Vessel** will be in breach of the agreement and entire debt owed becomes due right away

b. All other rent payments are governed by the lease agreement for late fees.

c. All Past Debt repayments are due on the 20th of each month per Payment Schedule, if any of those payments are missed or not paid then **Vessel** will be in breach of the agreement and entire debt becomes due right away.

d. If any regular monthly rent payment (besides the first one due Apr 1st), isn't paid with full penalties by the 1st of the following month (i.e over 30 days late), even if the debt payment is made on time. Then **Vessel** will be in breach of the agreement and all debts owed becomes due right away.

*[signature: G.N.R.]*

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth opposite the respective signatures set forth below.

Dated: 8th March 2019

Witnesses for H.S:

*[signatures]*

HARKHAM SHIPPING LLC

By: Gabriel Harkham

Name: GR

Title: Manager

Dated: 4 March 2019

Witnesses for vessel owner:

*[signatures]*

LOYALTY OVERSEAS CORPORATION

By: Rosemene Cesar

Name: Rosemene Cese

Title: Manager

| LOYALTY EXPRESS PAYMENT SCHEDULE | | | Current Debt Balance $185,000 |
|---|---|---|---|
| March 20th | Rent Payment<br>Add March Rent to Debt Balance | $0 | New Debt Balance $215,000 |
| April 1st<br>April 1st | Rent Payment<br>Partial month | $29,500<br>$15,000 | Debt Balance $215,000 |
| May 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $193,500 |
| June 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $172,000 |
| July 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $150,500 |
| August 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $129,000 |
| September 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $107,500 |
| October 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $86,000 |
| November 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $64,500 |
| December 1st<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $43,000 |
| Jan 1st 2020<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $21,500 |
| Feb 1st 2020<br>20th | Rent Payment<br>Debt Repayment | $29,500<br>$21,500 | Debt Balance $0 |

*[signature]*

7